UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X   Case No.
JESENIA REYES,

              Plaintiff,

                                                   **COMPLAINT**

  -against-

                                                   **Jury Trial Demanded**

CITY PRACTICE GROUP OF NEW YORK, LLC,
SUMMIT HEALTH MANAGEMENT, LLC,

              Defendants.
-------------------------------------------------------------X

Plaintiff Jesenia Reyes ("Reyes") alleges against the Defendant City Practice Group of New York, LLC ("CityMD") and the Defendant Summit Health Management, LLC ("Summit") (collectively "Defendants"), upon information and belief, as follows:

## NATURE OF THE CLAIMS

1. Plaintiff Reyes brings this action against the Defendants pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq*. ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq*. ("NYSHRL") and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL") to recover damages she sustained as the result of being discriminated against and retaliated against on the basis of her pregnancy.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiff's claims under Title VII pursuant to 28 U.S.C. § 1331 and 1343, because those claims arise under the laws of the United States. This Court has supplemental subject matter jurisdiction over Plaintiff's related NYSHRL and NYCHRL claims pursuant to 28 U.S.C. § 1367.

1

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, occurred in this district.

4. On August 2, 2022, Plaintiff Reyes filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") (Federal Charge No. 520-2022-07252). On September 29, 2022, EEOC issued Plaintiff Notice of Right to Sue (annexed hereto as Exhibit A).

5. Plaintiff has exhausted administrative remedies, and any and all other prerequisites to the filing of this suit have been met.

## THE PARTIES

6. Plaintiff resides in the Hudson County in the State of New Jersey.

7. Plaintiff is a 26-year old woman, who graduated from the York College/CUNY with 3.8 GPA, and is in the middle of obtaining her Master's degree in Social Work at Hunter College.

8. Plaintiff is pregnant and therefore is protected from unlawful discriminatory practices on the basis of her sex under Title VII, NYSHRL and NYCHRL.

9. Defendant CityMD is a foreign limited liability company organized and existing under and by virtue of the laws of the State of Delaware.

10. Defendant CityMD is authorized to conduct business in the State of New York.

11. Defendant CityMD is located at 336 East 86th Street, New York, New York 10028.

12. Defendant CityMD is the largest provider of urgent cares in New York and New Jersey.

13. Defendant CityMD was Plaintiff's employer within the meaning of Title VII, NYSHRL and NYCHRL.

14. Defendant CityMD issued Plaintiff a W-2 for 2020.

15. Defendant Summit is a foreign limited liability company organized and existing under and by virtue of the laws of the State of New Jersey.

16. Defendant Summit is authorized to conduct business in the State of New York.

17. Defendant Summit is located at 1 Diamond Hill Road, Berkeley Heights, New Jersey 07922.

18. Defendant Summit was Plaintiff's employer within the meaning of Title VII, NYSHRL and NYCHRL.

19. Defendant Summit issued Plaintiff a W-2 for 2021.

20. Defendant Summit is a physician network that was formed by the 2019 merger between Summit Medical Group, a physician-governed multispecialty medical group, and the Defendant CityMD.

21. The combined company is now "Summit Health".

22. Defendants Summit and CityMD jointly controlled aspects of Plaintiff's compensation, terms, conditions, privileges of employment.

23. Defendants Summit and CityMD are part of the same organization.

24. Defendants Summit and CityMD are part of a single integrated enterprise.

25. Defendant Summit and CityMD handled aspects of employer-employee relationship jointly.

26. The work performed by Plaintiff was directly essential to the businesses operated by Defendants Summit and CityMD.

## STATEMENT OF FACTS

27. On or about December 10, 2019, Plaintiff commenced her employment with CityMD.

28. Plaintiff worked at an urgent clinic, located at 14 West 14th Street, New York, New York 10011.

29. On occasion, Plaintiff picked up additional shifts at CityMD, located at 331 6th Avenue, New

York, New York 10014.

30. Plaintiff was employed as a Patient Care Representative ("PCR").

31. In that role, Plaintiff was to greet and direct visitors, maintain an efficient patient flow through the registration process, promptly answer and direct phone calls, inform patients of delay in schedules, post all self pay charges, collect payments and provide patients with receipts, reconcile daily payments, and so on.

32. Plaintiff was paid $18.87 per hour.

33. Plaintiff was entitled to various benefits, such as medical, dental, vision insurance; short/long-term disability benefits; HAS; life insurance; 401K plan with company matching contribution; cash bonus programs, and so on.

34. Plaintiff was hired by Melissa (Last Name Currently Unknown) and Ian (Last Name Currently Unknown).

35. Plaintiff reported to Gerald (Last Name Currently Unknown), the General Manager.

36. In 2022, Maham Chaudhry was promoted from a medical assistant position to the Assistant Site Manager position, and was transferred to work at the CityMD urgent clinic, located at 14 West 14th Street, New York, New York 10011.

37. Since Maham Chaudhry's relocation, Plaintiff started reporting to Maham Chaudhry, the Assistant Site Manager, as well.

38. During the entirety of her employment with CityMD, Plaintiff was a stellar employee.

39. Plaintiff satisfactory performed her duties and responsibilities, and received a positive feedback regarding her work performance.

40. In or around January 2022, Plaintiff learned of her pregnancy.

41. In or around April 2022, Plaintiff informed Gerald about her pregnancy.

42. Despite her outstanding work performance, Plaintiff became the target of unlawful discriminatory practices on the basis of her pregnancy.

**Passing Over for Promotion**

43. During Plaintiff's 2021 annual review, and prior to disclosing her pregnancy, Plaintiff was informed by Gerald that she would be promoted to a Senior PCR position (paying up to $22.00 per hour) or a Shift Supervisor position (paying up to $45.00 per hour).

44. After Plaintiff disclosed her pregnancy to Gerald, Plaintiff was passed over for promotion to a Senior PCR position and a Shift Supervision position, for which the two other non-pregnant employees were recruited, but not hired for lack of qualifications.

45. By passing over Plaintiff for promotion because of her pregnancy, the Defendants, through their agents and employees, took an adverse employment action against Plaintiff, in further discrimination against her on the basis of her sex.

46. As the result, instead of earning $22.00 per hour in the position of the Senior PCR, or $45.00 per hour in the position of the Shift Supervisor, Plaintiff continued earning only $18.87 per hour as a regular PCR.

**Denial of Accommodation**

47. In or around April 2022, Plaintiff's schedule was Monday from 8a.m. to 12a.m., Tuesday from 8a.m. to 6p.m., and Friday from 8a.m. to 8p.m.

48. In or around April 2022, Plaintiff requested a reasonable accommodation from the Defendants related to her pregnancy.

49. Specifically, Plaintiff requested if she could work Monday, Wednesday, Friday, instead of Monday, Tuesday, Friday, because working a 16-hour shift on Monday, followed by the 10-hour shift on Tuesday, leaving Plaintiff with only eight hours between the shifts, was too

strenuous for Plaintiff's pregnancy.

50. CityMD, which is the largest urgent care company in the New York metro area, would not sustain an undue hardship by providing a reasonable accommodation to Plaintiff due to her pregnancy.

51. Gerald acknowledged Plaintiff's request for a reasonable accommodation, but directed Plaintiff to speak to Maham Chaudhry instead, since she "did the scheduling".

52. Following Gerald's instructions, Plaintiff reached out to Maham Chaudhry via email.

53. Plaintiff's request for accommodation was acknowledged, but no actual accommodation was provided.

54. Plaintiff repeatedly requested a reasonable accommodation related to her pregnancy for the months of May, June and July, but her requests fell on deaf ears.

55. Every time Plaintiff requested for an accommodation related to her pregnancy, she was told that unfortunately, "the schedules are already made".

56. As the result of the Defendants' failure to provide a reasonable accommodation related to Plaintiff's pregnancy, she had no choice, but to continue working on Monday (16-hour shift), Tuesday (10-hour shift) and Friday (12-hour shift).

57. In addition, Plaintiff was told to pick up occasional shifts on the weekends.

58. As Plaintiff's pregnancy progressed, Plaintiff began showing, and working the 16-hour shift on Monday, followed by the 10-hour shift on Tuesday, became extremely difficult for her.

59. In or around June 2022, Plaintiff reached out to the management again, in a desperate attempt to obtain a reasonable accommodation for at least some portion of her pregnancy.

60. In her email to Maham Chaudhry, Plaintiff again requested a reasonable accommodation related to her pregnancy for the month of August.

61. This time, Plaintiff capitalized her request, and emphasized that denial of accommodation would be strenuous for her pregnancy.

62. Again, Plaintiff's request for a reasonable accommodation was denied.

63. On May 10, 2022, Maham Chaudhry advised Plaintiff that she would forward her requests related to childcare and prenatal appointments to Employee Relations, and that Plaintiff "would be contacted by a member of Employee Relations shortly".

64. To date, Plaintiff has never heard back from Employee Relations.

65. By refusing to provide reasonable accommodation to Plaintiff's known pregnancy-related condition, the Defendants engaged in unlawful discriminatory practice.

**Retaliation**

66. On June 27, 2022, in retaliation against Plaintiff for engaging in the protected activity by requesting a reasonable accommodation related to her pregnancy, Maham Chaudhry summoned Plaintiff into a meeting, during which she was reprimanded for the alleged failure to wear a uniform.

67. In that regard, the Defendants required their employees to wear the following uniform: black pants, CityMD top and a name tag.

68. In compliance with the company's policy, on the day in question, Plaintiff wore a black CityMD sweater, black slacks, crocs and a black shirt with graphic lettering on it, which was only visible when Plaintiff put her prenatal belt on, but which she had zipped back up.

69. Plaintiff explained that due to her pregnancy, Plaintiff felt light-headed and needed some air, and therefore she would unzip the CityMD sweater from time-to-time.

70. Previously, prior to disclosing her pregnancy, Plaintiff wore such uniform without issues.

71. It is only after Plaintiff repeatedly requested a reasonable accommodation related to her

pregnancy, that her uniform appeared to be a problem.

72. Other non-pregnant employees were never reprimanded for their failure to wear a uniform, even when they were wearing leggings.

73. The Defendants, through their agents and employees, continued looking for a pre-textual reason to terminate Plaintiff due to her pregnancy and her repeated requests for accommodation.

74. In that regard, the Defendants, through their agents and employees, started actively reviewing cameras in order to find a cover-up for Plaintiff's wrongful termination.

75. On July 28, 2022, in further retaliation against Plaintiff, Plaintiff was called into a meeting, where Gerald and Maham Chaudhry were present.

76. During the meeting, Plaintiff, who was pregnant and was clearly showing, was informed that her employment at CityMD was terminated.

77. The *de jure* reason for termination was memorialized in the July 5, 2022 termination notice, which indicated that Plaintiff was let go due to violation of unspecified Company policies.

78. Maham Chaudhry and Gerald falsely accused Plaintiff in stealing time, even though it was a common practice for CityMD employees, such as Plaintiff, to leave work early to be able to catch the midnight bus to New Jersey in order to be able to make it on time before the morning shift in New York the very next day.

79. Previously, Gerald personally clocked out Plaintiff if Plaintiff left slightly before 12a.m. to catch the midnight bus to New Jersey, when Plaintiff inadvertently forgot to clock out on her own.

80. On one occasion, when Plaintiff missed the bus, she had to stay at the bus station until 4a.m. and then return at 8a.m. to work the next day shift at CityMD.

81. Following Plaintiff's request for a reasonable accommodation related to her pregnancy, the Defendants misapplied their own practice for clock/in-clock out as a pre-text for Plaintiff's termination.

82. Other non-pregnant employees were not terminated for engaging in a similar conduct for which Plaintiff was purportedly terminated for.

83. At least one other male employee was warned about, but not fired, for engaging in a similar conduct.

84. The very same male employee was promoted shortly following his engagement in the practice, for which Plaintiff was allegedly fired.

85. Plaintiff's pregnancy was the motivating factor behind her wrongful termination.

86. As the result of the Defendants' unlawful employment practices, Plaintiff suffered and continues to suffer a severe emotional distress.

87. **By terminating Plaintiff because of her pregnancy, the Defendants caused Plaintiff to lose her insurance on the fifth month of her pregnancy, resulting in her inability to afford her regular OB-GYN prenatal services, and causing Plaintiff to look for another OB-GYN at a late stage of her pregnancy.**

88. Plaintiff has been struggling to find a new OB-GYN as many doctors are reluctant to take the new patients at a late state of the pregnancy.

89. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

90. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

91. As Defendants' conduct has been willful, reckless, outrageous, intentional, and/or malicious, Plaintiff also demands punitive damages in an amount which exceeds the jurisdictional limits of all lower Courts.

## FIRST CAUSE OF ACTION
### Discrimination in Violation of Title VII

92. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

93. Pursuant to 42 USCS § 2000e-2(a)(1), it shall be an unlawful employment practice for an employer to discharge any individual, because of such individual's sex.

94. Under 42 USCS § 2000e (k), the terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy.

95. Pursuant to 42 USCS § 2000e (m), an unlawful employment practice is established when the complaining party demonstrates that sex was a motivating factor for any employment practice, even though other factors also motivated the practice.

96. The Defendants, through their agents and employees, unlawfully discriminated against Plaintiff because of her sex by passing her over for promotion, denying her request for a reasonable accommodation and terminating her employment.

97. As a direct and proximate result of these Defendants' unlawful employment practices, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## SECOND CAUSE OF ACTION
### Retaliation in Violation of Title VII

98. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

99. Pursuant to 42 USCS § 2000e-3, it shall be an unlawful employment practice for an employer to discriminate against any of his employees, or to discriminate against any individual because she has opposed any practice made an unlawful employment practice.

100. The Defendants, through their agents and employees, unlawfully retaliated against Plaintiff for opposing the Defendants' discriminatory practices by terminating her employment.

101. As a direct and proximate result of the Defendants' unlawful and retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## THIRD CAUSE OF ACTION
### Discrimination in Violation of NYSHRL

102. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

103. The NYSHRL §296 (1) provides that it shall be an unlawful discriminatory practice for an employer because of an individual's sex, disability and familial status, to discharge from employment such individual.

104. Pursuant to the NYSHRL §292 (21-f) the term pregnancy-related condition means a medical condition related to pregnancy that inhibits the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques.

105. Pursuant to NYSHRL § 296 (3)(a), it shall be an unlawful discriminatory practice for an employer to refuse to provide reasonable accommodations to the pregnancy-related conditions of an employee.

106. The Defendants unlawfully discriminated against Plaintiff by denying her request for accommodation, and terminating her employment on the basis of her pregnancy.

107. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which they are entitled to an award of monetary damages and other relief.

## FOURTH CAUSE OF ACTION
### Retaliation in Violation of NYSHRL

108. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

109. The NYSHRL §296 (7) provides that it shall be unlawful discriminatory practice for any person to retaliate or discriminate against any person because she has opposed any practices forbidden by Human Rights Law.

110. The Defendants engaged in an unlawful discriminatory practice by retaliating against the Plaintiff for opposing the Defendants' discriminatory practices.

111. As a direct and proximate result of the Defendants' unlawful and retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## FIFTH CAUSE OF ACTION
### Discrimination in Violation of NYCHRL

112. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

113. Pursuant to NYCHRL § 8-107 (1) it shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived gender, disability, of any person: (2) To refuse to hire or employ or to bar or to discharge from employment such person; or (3) To discriminate against such person in compensation or in terms, conditions or privileges of employment. Part 22 also prohibits employers from denying accommodation to employees related to their pregnancies.

114. The Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff, denying her request for a reasonable accommodation, passing her over for promotion and terminating her employment.

115. As a direct and proximate result of the Defendants' unlawful and retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## SIXTH CAUSE OF ACTION
**Discrimination in Violation of NYCHRL**

116. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

117. Pursuant to NYCHRL § 8-107 (7) it shall be an unlawful discriminatory practice to retaliate or discriminate in any manner against any person because such person has opposed the discriminatory practice prohibited by NYCHRL.

118. The Defendants engaged in an unlawful retaliatory practice by discriminating against Plaintiff, and terminating her employment in response to her complaints of discrimination.

119. As a direct and proximate result of the Defendants' unlawful and retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

**PRAYER FOR RELIEF**

      **WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under applicable federal and state law;

b. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. Declaring that the Defendants engaged in unlawful employment practices prohibited by the Title VII and awarding Plaintiff a recovery for damages sustained;

d. Declaring that the Defendants engaged in unlawful employment practices prohibited by the NYSHRL and awarding Plaintiff a recovery for damages sustained;

e. Declaring that the Defendants engaged in unlawful employment practices prohibited by the NYCHRL and awarding Plaintiff a recovery for damages sustained;

f. Declaring that the Defendants discriminated against and retaliated against and terminated Plaintiff on the basis of her sex, disability and familial status and awarding Plaintiff a recovery for damages sustained;

g. Declaring that the Defendants discriminated against and retaliated against and terminated Plaintiff on the basis of her sex, disability and familial status and awarding Plaintiff a recovery for damages sustained;

h. Awarding damages to Plaintiff, retroactive to the date of her termination, for all lost wages and benefits resulting from the Defendants' unlawful employment practices in an amount that exceeds the jurisdictional limit of all lower courts;

i. Awarding Plaintiff compensatory damages for her mental and emotional injuries in an amount that exceeds the jurisdictional limit of all lower courts;

j. An award of prejudgment and post-judgment interest;

k. An award of punitive damages where applicable;

l. An award of costs and expenses of this action together with reasonable attorneys' and expert fees;

m. Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the FRCP, Plaintiff demands a trial by jury.

Dated: November 4, 2022
New York, New York

Respectfully submitted,

Akin Law Group PLLC

*/s/ Olena Tatura*

_____

Olena Tatura, Esq.
45 Broadway, Suite 1420
New York, NY 10006
(212) 825-1400
olena@akinlaws.com
*Counsel for Plaintiff*